UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

DENEE VANDYKE, individually and on behalf
of a class of similarly situated individuals,

# 08-22131
## CIV-GRAHAM
/TORRES

FILED BY_____

2008 JUL 28 PM 3: 15

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

Plaintiff,

v.

ALLTEL COMMUNICATIONS, LLC,
a Delaware Limited Liability Company, and
MEDIA BREAKAWAY, LLC,
a Nevada Limited Liability Company,

Defendants.
_____/

## VERIFIED NOTICE OF REMOVAL

Defendant, Media Breakaway, LLC ("Ringaza"), through its counsel, Shutts & Bowen LLP, and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453, hereby removes this action from the Circuit Court in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida. In support of this Notice, Ringaza states as follows:

1)   On or about June 10, 2008, a putative "Class Action Complaint," captioned *Denee Vandyke v. Alltel Communications, LLC, and Media Breakaway, LLC*, Case No. 08-32898 CA 02, was filed in the Circuit Court in and for Miami-Dade County, Florida. A copy of the "Class Action Complaint" ("Complaint") is attached as Exhibit 1.

2)   Ringaza is a "mobile content provider" for cellular telephone subscribers nationwide. Complaint, ¶ 3.

3)   Ringaza was served with a copy of the Complaint on June 26, 2008. A copy of the Summons and the confirmation of its service are attached as Exhibit 2.

4)      Plaintiff's Complaint contains three counts: Count I for "Breach of Contract on behalf of the Carrier Class," Count II for "Restitution/Unjust Enrichment on behalf of the Ringaza Class," and Count III for "Tortious Interference with a Contract on behalf of the Ringaza Class."

5)      The allegations underlying all counts of Plaintiff's Complaint focus on "premium" text message services, also referred to in the Complaint as "mobile content," which are available to customers who receive cellular telephone service from carriers such as Co-Defendant Alltel Communications, LLC ("Alltel").  Complaint, ¶¶ 6, 7.

6)      As alleged in the Complaint, Alltel is a national provider of cellular telephone service that bills its subscribers for mobile content provided by third-party mobile content providers.  Complaint, ¶¶ 2, 24.

7)      Plaintiff further alleges that providers of mobile content, such as Ringaza, with the help of third-party companies known as aggregators (including a company called m-Qube), arrive at agreements that allow them to use the billing and collection mechanisms of cellular carriers to bill customers for the mobile content.  Complaint, ¶ 7.

8)      Plaintiff also alleges that Alltel has contracted with third-party content providers to bill its customers directly for mobile content provided by the third parties.  Complaint, ¶ 24.

9)      In addition, Plaintiff alleges that, in breach of its contracts with Plaintiff and with other purported Alltel wireless telephone subscribers in Florida, and as part of "a deliberate and willful scheme to cheat large numbers of people," Alltel charges customers for unauthorized "premium" text message services and other mobile content.  Complaint, ¶¶ 7, 23, 27-29, 43(A), 53-59.

10)    According to Plaintiff, "mobile content providers" such as Ringaza have sanctioned and promoted such "illegal billing." Complaint, ¶ 19.

## PUTATIVE CLASSES

11)    Plaintiff describes the putative "Carrier Class" as "all Alltel wireless telephone subscribers in Florida who suffered losses or damages as a result of Alltel billing for mobile content products and services not authorized by the subscriber." Complaint, ¶ 43(A).

12)    Plaintiff describes the putative "Ringaza Class" as "all wireless telephone subscribers in the nation who suffered losses or damages as a result of Ringaza billing for mobile content products and services not authorized by the subscriber" (emphasis added). Complaint, ¶ 43(B).   Plaintiff alleges that "there are no less than 1,000 class members in each class." Complaint, ¶ 44.

13)    The Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because it is a class action involving more than 100 putative class members where the matter in controversy exceeds $5,000,000, and Plaintiff and Defendants, Alltel and Ringaza, have the requisite diversity of citizenship.

## DIVERSITY OF CITIZENSHIP

14)    This case satisfies 28 U.S.C. § 1332(d), insofar as Plaintiff (one member of the putative class of plaintiffs) is a citizen of a State different than that of Alltel and of Ringaza. Plaintiff is a citizen of Florida. Complaint, ¶ 1. Alltel is alleged to be a citizen of the States of Delaware and Arkansas. Complaint, ¶ 2.[1]   Ringaza is not a citizen of Florida and was not a

---

[1] Upon information and belief, Alltel's members are Cellco Partnership (DBA Verizon Wireless), with citizenship in Delaware and New Jersey, Alltel Corporation, with citizenship in Delaware and Arkansas, and Illinois Valley Cellular RSA 2-II Partnership, with citizenship in Illinois.

citizen of Florida on the date of the filing of the Complaint. Ringaza's members are a living trust, whose beneficiaries are citizens of Colorado, and Media Gold Mine, Inc., a Nevada corporation with its principal place of business in Colorado. Under 28 U.S.C. § 1332, neither Alltel nor Ringaza are citizens of the State of Florida.

## AMOUNT IN CONTROVERSY

15)     This case satisfies 28 U.S.C. § 1332(d) because, *inter alia*, the matter in controversy is well in excess of $5,000,000.

16)     Among other relief, the Complaint seeks damages "against Alltel for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct." Complaint, at 14.

17)     The Complaint also seeks damages "against Ringaza for all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct." *Id*.

18)     Plaintiff has not alleged that the putative classes will neither seek nor accept more than $5,000,000 in the aggregate.

19)     The Complaint does not describe the allegedly unauthorized services with particularity, or identify the specific "unauthorized" charges about which Plaintiff complains. According to the Complaint, however, "the amount Alltel is taking [for unauthorized products and services] is small on an individual basis – as little as a few dollars *to at most several hundreds of dollars per person*." Complaint, ¶ 30 (emphasis added).

20)     Plaintiff further alleges a national class against Ringaza (Complaint, ¶ 43(B)), and Plaintiff alleges that "large numbers of people" (Complaint, ¶ 29), have "frequently," "systematically" and "repeatedly" been charged for unauthorized mobile content "for years" Complaint, ¶¶ 27, 28.

21) Ringaza has provided mobile content for cellular telephone subscribers nationwide since 2005. Ringaza charges for its mobile content by submitting a cellular telephone number, and the amount to be charged to that number, to entities referred to in the Complaint as aggregators.

22) Plaintiff alleges that "a substantial part of mobile content 'sales' are effected through web sites using misleading, oblique, or inadequately explained 'consent' procedures." Complaint, ¶¶ 14. Plaintiff further alleges that "[m]obile content providers have . . . little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services." Complaint, ¶ 14.

23) Although Ringaza disagrees that any of its charges are unauthorized, **all** of Ringaza's mobile content is sold via "web sites using . . . 'consent' procedures." Each Ringaza mobile content purchase originates in the same manner: a cellular telephone subscriber logs on to one of Ringaza's websites, selects mobile content, and proceeds through "consent procedures" to purchase that mobile content.

24) Plaintiff alleges that Ringaza has acted similarly with respect to all putative class members ("acted and failed to act on grounds generally applicable to the [Class]"). Complaint ¶ 48. Plaintiff has further alleged that "the factual . . . bases of [Ringaza's] liability to [the Class] are the same." Complaint, ¶ 49. Thus, under Plaintiff's allegations, the "factual bases" of her claim (Ringaza's allegedly "misleading, oblique, or inadequately explained 'consent' procedures") "are the same" for all putative class members.

25) Therefore, under the Plaintiff's allegations (and reserving all rights to challenge these allegations) if the "consent procedures" used by Ringaza are "misleading, oblique, or inadequately explained," then all of Ringaza's mobile content charges would be unauthorized.

26)    Plaintiff and the Ringaza Class seek restitution from Ringaza.  Complaint, ¶¶ 60-63.

27)    Thus, under the Plaintiff's allegations, all of Ringaza's charges are at issue in this action, and a determination of the amount in controversy can be ascertained by examining the total Ringaza's sales nationwide.

28)    Since 2005, Ringaza has collected well in excess of $5,000,000 of charges for mobile content provided to cellular customers nationwide.

29)    Thus, while Ringaza does not admit that it is liable to Plaintiff or the members of the putative class, and while Ringaza specifically reserves the right to challenge the similarities in each transaction and whether each transaction was unauthorized, the amount put into controversy by Plaintiff's Complaint and Plaintiff's allegations is well in excess of $5,000,000. *See, e.g., Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448-49 (7th Cir. 2005) (amount in controversy requirement satisfied when defendant, without admitting liability, alleged facts as to the number of facsimile transmissions which potentially violated the law which, when multiplied by the potential statutory damages for each violation, demonstrated "a reasonably probability that the stakes exceed the minimum" jurisdictional amount).

30)    Accordingly, this action may be removed by Ringaza under 28 U.S.C. §§ 1332, 1441, 1446, 1453, because it is a class action satisfying the amount in controversy and diversity of citizenship requirements.

## SERVICE OF REMOVAL PAPERS

31)    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of Ringaza's receipt of the initial pleading setting forth Plaintiff's claim for relief upon which this action is based.

32)    Pursuant to U.S.C. § 1446(a), Ringaza has attached to this Notice of Removal copies of all process, pleadings, and orders served upon or filed by it, the removing Defendant in this action. (*See* Complaint, attached hereto as Exhibit 1; Summons and the confirmation of its service, attached hereto as Exhibit 2).

33)    By filing this Notice of Removal, Ringaza does not waive any defenses to the claims asserted by Plaintiff which may be available to it, or concede that Plaintiff has stated any claim upon which relief can be granted.

34)    Ringaza further represents that this Notice of Removal will be served on Plaintiff's counsel as indicated on the attached Certificate of Service.

35)    A copy of this Notice of Removal will be filed with the Circuit Court in and for Miami-Dade County, Florida.

## VERIFICATION

I, Jennifer Frederick, declare as follows:

1.  I am the Director, Special Projects, of Media Breakaway, LLC.

2.  I have personal knowledge of Media Breakaway, LLC and its activities, including those set forth in this Notice of Removal, and if called to testify I would competently testify as to the matters stated herein.

3.  I verify under penalty of perjury that the factual statements contained in this Notice of Removal concerning Media Breakaway, LLC and its business activities are true and correct.

Executed on July 28, 2008.

Jennifer Frederick

Respectfully submitted,

SHUTTS & BOWEN LLP
*Attorneys for Defendant*
*Media Breakaway, LLC*
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

Frank A. Zacherl
Florida Bar Number 868094

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 28th day of July, 2008, a copy of the foregoing was

served by U.S. Mail and Fax on **David P. Healy**, 2846-B Remington Green Cir., Tallahassee,

Florida 32308, (850) 222-7339 (fax); and **Jay Edelson, Myles McGuire**, KamberEdelson, LLC,

53 West Jackson Boulevard, Suite 550, Chicago Illinois 60604, (312) 589-6378 (fax) (counsel

for Plaintiff).

Of Counsel

MIADOCS 2921027 1

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

DENEE VANDYKE, individually and on behalf )
of a class of similarly situated individuals, )
                                    )
                 Plaintiff, )       No.     08 - 3 2 8 9 8 CA 0 2
                                    )
               v. )
                                      )
ALLTEL COMMUNICATIONS, LLC, a )
Delaware Limited Liability Company, )
corporation, and MEDIA BREAKAWAY, LLC )     CLASS REPRESENTATION
a Nevada Limited Liability Company, )
                                      )
                 Defendants. )
————————————————————x

ORIGINAL
FILED
JUN 1 0 2008
HARVEY RUVIN
CLERK

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Denee Vandyke brings this class action complaint pursuant to Florida Rule of Civil Procedure 1.220 against Defendants Alltel Communications, LLC ("Alltel") and Defendant Media Breakaway, LLC d/b/a Ringaza ("Ringaza") seeking to stop Defendants' unlawful practice of charging cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Defendants unlawfully collecting money from consumers statewide, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

**Parties**

1.  Plaintiff Denee Vandyke is a Florida resident.

2.  Defendant Alltel is a leading provider of cellular telephone service in the United States. Alltel is a Delaware corporation with its principal offices in the State of Arkansas. Alltel does business throughout the State of Florida and this County.

3.  Defendant Media Breakaway, LLC d/b/a Ringaza ("Ringaza") is a "mobile content provider" that creates and distributes, among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, news, and information transmitted or received via chat services (collectively, "content") to cell phone devices. Ringaza is a Nevada limited liability company with its headquarters and principal place of business in Colorado. It does business throughout the State of Florida and in this County.

**Jurisdiction and Venue**

4.  The amount in controversy exceeds the sum of $15,000 exclusive of interest, costs and attorney's fees. This Court has jurisdiction over the subject matter.

5.  Venue is properly laid in Dade County pursuant to section 47.051, Florida Statutes (2007) because Defendants conduct their regular business affairs through one or more agents or other representatives located in Dade County, Florida.

**Conduct Complained Of**

6.  This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather

2

alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

7.     The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Alltel. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies, such as m-Qube, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount charged in each premium mobile content transaction.

8.     The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw – understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant defendants – is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendants in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

9.     Defendants exploit this flaw by selling mobile content through the carriers' mobile commerce application installed on consumers' cellular telephones (commonly referred to

3

as "on-portal" or "on-deck" transactions), as well as through a variety of other mediums such as television, radio and non-mobile Internet websites (collectively known as "off-portal" or "off-deck" transactions).

10.     As Defendants also know, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendants have reaped and retained their respective shares of the improper collections.

11.     While the total sales in Florida of premium mobile content in 2008 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

12.     Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

13.     Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator. The

4

aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

14. Because the protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

15. While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

16. The carrier then bills and collects the charge from its current subscriber, retains a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, who retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider.

5

17.     Numerous transactions and significant amounts of dollars have been processed in Florida transactions over recent years and carrier partners, aggregator partners and content provider partners have profited greatly from their arrangements.

18.     Carriers such as Alltel routinely process charges for mobile content that have not been authorized by the charged party.

19.     Mobile content providers such as Defendant Ringaza have not only sanctioned this illegal billing, they have promoted it by facilitating partnerships between the carriers and the aggregators that contains few if any safeguards to prevent unauthorized charges.

20.     Indeed, if Defendants wanted to end this illegal billing, they could do so in an instant.  All they would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and her/his authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

21.     But instead of implementing such a simple safeguard, Defendants have intentionally created and maintained a system that encourages fraud at every step.

### The Carrier's Role in the Scheme to Defraud

22.     Alltel uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

23.     As described above, Alltel's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors.

6

24.    Alltel has contracted with third-party providers to bill and collect from Alltel's customers the services provided by such third-party content providers, the charges for which are included directly on a customer's monthly wireless bill.

25.    The duty of good faith and fair dealing, a part of every contract, requires that Alltel not bill any customer for any good or service not authorized by the customer.

26.    Upon execution of said Service Agreements and activation of cellular telephone accounts, Alltel provides its customers a ten-digit cellular telephone number.

27.    As explained above, unbeknownst to its customers, Alltel frequently charges consumers for services that were never authorized.

28.    As a result, Alltel has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers. Alltel and third-party service providers have, on information and belief, profited significantly through this practice.

29.    Alltel's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the mobile content provider's claim that such customer consented to be charged for their mobile content services. Alltel further knows that it cannot authenticate such customer's authority to be billed for mobile content charges. In light of its knowledge of these facts. Alltel's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

30.    Because the amount Alltel is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person – and because of Alltel's vast

7

resources and superior bargaining power, Defendants employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

## Amount In Controversy

31.    Plaintiff makes no specific allegation that the amount in controversy (including requests for attorneys' fees, injunctive relief, etc.) exceeds any specific amount, let alone $5,000,000.

32.    Further, Plaintiff is not seeking a refund of all mobile content charges, but rather only those that were unauthorized.

## The Facts Relating to Named Plaintiff

33.    In or about 2007, Plaintiff purchased new cell phone service for her family's personal use from an authorized Alltel sales representative.

34.    On that same day, in exchange for an Alltel cell phone service plan, Plaintiff agreed to pay service fees to Defendant on a periodic basis.

35.    Upon activating her cellular telephone account, Alltel provided Plaintiff a cellular telephone number.

36.    Beginning in or about the latter half of 2007, Plaintiff's cell phone account was charged for multiple unwanted mobile content services by Defendants.

37.    At no time did Plaintiff authorize the purchase of these products and services offered by Defendant, and at no time did Plaintiff consent to text messages being sent to her cellular telephone.

38.    During the relevant time period, Defendant Alltel caused Plaintiff to be charged service fees in various amounts for mobile content provided by Defendant Ringaza.

8

39.     At no time did Plaintiff authorize Defendant or anyone else to bill her for these charges.

40.     Refusing to pay for such unauthorized charges, Defendant Alltel discontinued Plaintiff's cellular telephone service in or about April 2008.

41.     Defendant continues to attempt to collect from Plaintiff for such unauthorized charges.

42.     At no time did Defendant verify Plaintiff's purported authorization of these charges, and at no time did Defendant provide a complete refund consisting of the premium text message charges, ordinary text messages, data charges, back interest and/or termination fees. Nor did Alltel provide Plaintiff an assurance that such unauthorized charges would not appear in future billing periods or that it would discontinue its attempted collection of such funds.

### Class Representation Allegations

43.     Plaintiff brings this action on behalf of herself and two classes of similarly situated individuals. Those classes are defined as follows:

A.      The "Carrier Class": a class consisting of all Alltel wireless telephone subscribers in Florida who suffered losses or damages as a result of Alltel billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendants, and (ii) any employee of a defendant.

B.      The "Ringaza Class": all wireless telephone subscribers in the nation who suffered losses or damages as a result of Ringaza billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendants, and (ii) any employee of a defendant.

9

44. This action is suitable for class treatment pursuant to Florida Rule of Civil Procedure 1.220(b)(3). On information and belief, there are no less than 1,000 class members in each respective class.

45. The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

46. Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

47. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

48. Defendants have acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

49. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

10

50.    There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Carrier Class include but are not limited to the following:

(a)    Whether Alltel's conduct described herein is in breach of contract.

51.    Common questions for the Ringaza Class include:

(a)    Whether Ringaza has unjustly received money belonging to Plaintiff and the Ringaza Class and whether, under principles of equity and good conscience, Ringaza should not be permitted to retain it;

(b)    Whether Ringaza tortiously interfered with contracts between Plaintiff and the Ringaza Class on the one hand, and their wireless carriers on the other hand, by causing them to be charged for products and services by their carrier that were unauthorized.

### COUNT I
### (Breach of Contract on behalf of the Carrier Class)

52.    Plaintiff incorporates by reference the foregoing allegations.

53.    Plaintiff and the Carrier Class entered into substantially identical agreements with Defendant Alltel whereby Plaintiff and Alltel agreed to pay a certain sum of money in exchange for Alltel's activation of Plaintiff's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Carrier Class.

54.    Defendant Alltel expressly and/or impliedly agreed to provide Plaintiff and the Carrier Class with a cellular telephone number free of unauthorized charges for third-party products and services.

11

55.    Defendant Alltel further expressly and/or impliedly agreed to bill Plaintiff and the Carrier Class only for products or services the purchase of which they had authorized.

56.    Defendant Alltel further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

57.    Defendant Alltel breached its contractual obligations by providing Plaintiff and the Carrier Class with cellular telephone accounts that included unauthorized charges for mobile content and discontinuing Plaintiff's cellular telephone service for refusing to pay for such unauthorized charges.

58.    Defendant Alltel further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by billing Plaintiff and the Carrier Class for products or services, the purchase of which they never authorized.

59.    The aforementioned breaches of contract have proximately caused the Plaintiff and the Carrier Class economic injury and other damages.

**COUNT II**
**(Restitution/Unjust Enrichment on behalf of the Ringaza Class)**

60.    Plaintiff incorporates by reference the foregoing allegations.

61.    A benefit has been conferred upon Ringaza by Plaintiff and the Ringaza Class. Ringaza has received and retains money belonging to Plaintiff and the Ringaza Class resulting from their billing and collecting significant amounts of money in unauthorized mobile content charges.

62.    Ringaza appreciates or has knowledge of said benefit.

12

63.     Under principles of equity and good conscience, Ringaza should not be permitted to retain the money belonging to Plaintiff and the Ringaza Class which Ringaza has unjustly received as a result of its actions.

## COUNT III
### (Tortious Interference with a Contract on behalf of the Ringaza Class)

64.     Plaintiff incorporates by reference the foregoing allegations.

65.     Plaintiff and the Ringaza Class had contractual relationships with their wireless carrier whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts, and their carrier's promise to provide various communication and related services to Plaintiff and the Ringaza Class, and to bill Plaintiff and the Ringaza Class only for products or services the purchase of which they had authorized.

66.     Ringaza knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

67.     Ringaza intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the state.

68.     Plaintiff and the Ringaza Class suffered loss as a direct result of the conduct of Ringaza.

WHEREFORE, Plaintiff Denee Vandyke, on behalf of herself and the Classes, prays for the following relief:

  a.     Certify this case as a class action on behalf of the Class as defined above and appoint Denee Vandyke Class Representative, and appoint David P. Healy as lead counsel:

13

b.   Declare that the actions of Alltel, as set out above, constitute a breach of contract;

c.   Enter judgment against Alltel for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct;

d.   Declare that the actions of Ringaza, as set out above, constitute unjust enrichment and tortious interference with a contract;

e.   Enter judgment against Ringaza for all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

f.   Award Plaintiff and the Class reasonable costs and attorneys' fees;

g.   Award Plaintiff and the Class pre- and post-judgment interest;

h.   Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

i.   Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

June 5, 2008

Denee Vandyke, individually and on behalf of a class of similarly situated individuals

David P. Healy (940410)
2846-B Remington Green Cir.
Tallahassee, FL 32308
(850) 222-5400
(850) 222-7339 (fax)
Counsel to Plaintiff

Of Counsel:

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Boulevard, Suite 550
Chicago, Illinois 60604
Telephone: (312) 589-6370

14

# EXHIBIT 2

IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

DENEE VANDYKE, individually and
on behalf of similarly situated individuals,

     Plaintiff,

vs.                          Case No. 08 - 3 2 8 9 8 CA 0 2

ALLTEL COMMUNICATIONS, LLC,
a Delaware limited liability company,
and Media Breakaway, LLC, a Nevada
limited liability company,

     Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant -

     Media Breakaway, LLC, a Nevada limited liability company

     Each defendant is required to serve written defenses to the complaint or petition on David P. Healy, Esq., whose address is 2846-B Remington Green Circle, Tallahassee, Florida 32308, within 20 days after service of this summons on that defendant, exclusive of the day of service and to file the original of the defenses with

the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on _____, 2008.

Harvey Ruvin
As Clerk of the Court

By _____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

DENEE VANDYKE, individually and on behalf )
of a class of similarly situated individuals, )
                                             )
                    Plaintiff,               )      Case No. 08-32898CA02
                                             )
          v.                                 )
                                             )
ALLTEL COMMUNICATIONS, LLC, a                )
Delaware Limited Liability Company,          )      CLASS REPRESENTATION
corporation, and MEDIA BREAKAWAY, LLC        )
a Nevada Limited Liability Company,          )
                                             )
                                             )
                    Defendants.              )
------------------------------------------------x

## Notice of Filing Return of Service

**PLEASE TAKE NOTICE** that Plaintiff presented for filing the attached return of

service upon Defendant Media Breakaway, LLC, a Nevada limited liability company. The

return indicates a service date of June 26, 2008.

> Denee Vandyke, individually and on behalf of a
> class of similarly situated individuals
>
> David P. Healy (940410)
> 2846-B Remington Green Cir.
> Tallahassee, FL 32308
> (850) 222-5400
> (850) 222-7339 (fax)
> Counsel to Plaintiff

Of Counsel:
Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Boulevard, Suite 550
Chicago, Illinois 60604
Telephone: (312) 589-6370

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via

Facsimile followed by First Class United States Mail, postage prepaid, to Frank Zacherl, Esq.

Shutts & Bowen, L.L.P. , 201 S. Biscayne Blvd., Suite 1500, Miami, FL 33131 (counsel to

Defendant Media Breakaway) this 23rd day of July, 2008.

# Affidavit of Process Server

Denee VanDyke vs Alltel Communications LLC 08-32898CA02
___PLAINTIFF/PETITIONER___ ___DEFENDANT/RESPONDENT___ ___CASE #___

Being duly sworn, on my oath, I Nichole Carruth
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** I served Media Breakaway, LLC
___NAME OF PERSON/ENTITY BEING SERVED___

with the (documents) ☐ Subpoena with $_____ witness fee and mileage

☒ Summons + Class action Complaint + Demand for Jury Trial

by serving (NAME) Cheryl Peddicord

at ☐ Home_____

☒ Business American Management Group, Inc 311 W. Third Street Carson City, NV.

☐ on (DATE) 6/26/08 at (TIME) 4:38 PM

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE)_____

from (CITY)_____ (STATE)_____

**Manner of Service:**
☐ By Personal Service.
☒ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,
namely Cheryl Peddicord
☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,
namely_____
☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address   ☐ Evading   ☐ Other:_____
☐ Address Does Not Exist   ☐ Service Cancelled by Litigant   _____
☐ Moved, Left no Forwarding   ☐ Unable to Serve in a Timely Fashion

**Service Attempts:** Service was attempted on: ( )_____ , ( )_____ , ( )_____
___DATE TIME___ ___DATE TIME___ ___DATE TIME___

( )_____ , ( )_____ , ( )_____
___DATE TIME___ ___DATE TIME___ ___DATE TIME___

**Description:** ☐ Male   ☒ White Skin   ☒ Black Hair   ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'   ☐ Under 100 Lbs.
☒ Female   ☐ Black Skin   ☒ Brown Hair   ☐ Balding   ☐ 21-36 Yrs.   ☐ 5'0"-5'3"   ☐ 100-130 Lbs.
☐ Yellow Skin   ☐ Blond Hair   ☐ 36-50 Yrs.   ☒ 5'4"-5'8"   ☐ 131-160 Lbs.
☐ Brown Skin   ☐ Gray Hair   ☐ Mustache   ☒ 51-65 Yrs.   ☐ 5'9"-6'0"   ☒ 161-200 Lbs.
☐ Glasses   ☐ Red Skin   ☐ Red Hair   ☐ Beard   ☐ Over 65 Yrs.   ☐ Over 6'   ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES:_____

State of Illinois   County of Cook

Subscribed and sworn to before me,
a notary public, this 3rd day of July , 2008

NOTARY PUBLIC

NOTARY PUBLIC
STATE OF ILLINOIS
County of Clark
MARCELL...
Appt. No. 05-302-40-1
My Appt. Expires April 7, 2009

SERVED BY
LASALLE PROCESS SERVERS

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

**JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

DENEE VANDYKE, individually and on behalf of a class of similarly situated individuals,

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David P. Healy, 2846-B Remington Green Cir., Tallahassee, FL 32308, (850) 222-5400, Jay Edelson, and Myles McGuire, KamberEdelson, LLC, 53 W. Jackson Blvd., Ste 550, Chicago IL 60604, (312) 589-6370

## DEFENDANTS

ALLTEL COMMUNICATIONS, LLC, and MEDIA BREAKAWAY, LLC

**08-22131**
**CIV-GRAHAM**

County of Residence of First Listed Defendant   Citizen of Another State
(IN U.S. PLAINTIFF CASES ONLY)

**/TORRES**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys (If Known)

For D#2: Frank Zacherl, Shutts & Bowen LLP, 1500 Miami Ctr., 201 S. Biscayne Blvd., Miami, FL 33131, (305) 358-6300

**(4)** Check County Where Action Arose: ✓ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
✓ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✓ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ✓ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

DADE-08-22131-CV-GRAHAM-Torres

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ✗ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
✓ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ✓ NO     b) Related Cases ☐ YES ✓ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. §§ 1332, 1441, 1446, 1453; Alleged unauthorized charges for cellular telephone mobile content.

LENGTH OF TRIAL via Unkn days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

✓ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ✓ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
s/Frank Zacherl

DATE
July 28, 2008

**FOR OFFICE USE ONLY**

AMOUNT $350.00   RECEIPT # 984521P

07/28/08