IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DENEE VANDYKE and BEN WALKER, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>) |
| Plaintiff, | ) CASE NO. 08-22131-CV<br>) GRAHAM/TORRES |
| v. | ) |
| MEDIA BREAKAWAY, LLC, a Nevada limited liability company, | ) |
| Defendant. | ) |

FILED by _AP_ D.C.

AUG 05 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## AWARD OF ARBITRATOR

WHEREAS, this cause was brought for the arbitration of the reasonable amount of attorneys' fees to be paid to Class Counsel pursuant to the Court's Order of June 15, 2009, and consistent with the Stipulation of Settlement executed by counsel on behalf of the Parties on February 13, 2009; and

WHEREAS, under the terms thereof, this matter was first mediated and thereafter arbitrated by the Undersigned; and

WHEREAS, an arbitration hearing was held on July 9, 2009, with arguments of law and presentations of evidence; and

WHEREAS, counsel for both sides, thereafter, submitted briefs in support of their respective positions of law and fact; and

Page 1

WHEREAS, the Undersigned has reviewed all submissions of legal authority and evidence presented by both sides and given due consideration thereto.

Now, therefore, the Undersigned makes the following applications of law, findings of fact, and conclusions supported by both:

I.  LEGAL APPLICATIONS

   A. Judge Donald L. Graham established the legal standard in this case by which the determination of a reasonable attorney fee would be determined when in open court he stated, "I am going to look at the totality of the case in making a determination as to whether I would approve your hopefully settled amount regarding attorney[s]' fees or not." (Plaintiffs' counsel's Exhibit 10--, Plaintiffs' Counsel's Reply Brief Dated May 8, 2009 with attached Exhibit B, Transcript of Hearing of March 27, 2009 at 10.)

   B. An attorneys' fee awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. Camden I Condominium Association v. Dunkle, 946 F. 2d 768 at Westlaw p.6 (11th Cir. 1991).

   C. Neither actual payout nor the reversionary characteristic of the fund interfere with the application of the "percentage of the fund" approach. See, Waters v. International Precious Metals Corp., 190 F.3d 1291 (11thCir. 1999).

   D. Where the "percentage of the fund" approach is applied, twelve factors have been established for evaluating, setting and reviewing the reasonable

percentage: (1) time and labor, (2) novelty and difficulty of the questions, (3) requisite skill, (4) preclusion of other employment, (5) customary fee, (6) fixed or contingent fee, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation, and ability of attorneys, (10) "undesirability" of the case, (11) nature and length of professional relationship with client; and (12) award in similar cases. Id. at Waters at Westlaw p. 4, citing, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974).

E. Case law citing reasonable percentages have been identified by opposing counsel as follows:

1. By Plaintiffs' counsel:

   (a) 33 1/3 %--Id at Waters at Westlaw p.6.

   (b) 20-30%--Id at Camden I at Westlaw p.7.

2. Defendant's counsel:

   a) 17%-- Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534 at Westlaw p. 15 (S.D. Fla. 1988).

   (b) 13%--Gray v. Mobile Messenger Americas, Inc., U.S. District Court (S.D. Fla.2009) (Defendant's Exhibit 5). Defendant has also presented a study which it asked to be given persuasive authoritative weight for the proposition that the median percentage for consumer class action awards nationally (non fee-shifting) is 13%. (<u>Attorneys Fees in Class Action Settlements, An Empirical Study,</u>

        Eisenberg and Miller, *Journal of Empirical Legal Studies*, Volume 1, Issue 1, 27-28 (March 2004) (Defendant's Exhibit 16.)

F. In the absence of a specific "settlement fund," the lodestar approach is appropriate for determining attorneys' fees. See <u>Christensen v. Kiewit-Murdock Inv. Corp.,</u> 815 F. 2d 206, 211 (2nd Cir. 19987) (finding "the award appellants seek would not be payable out of an "fund"); See <u>Holbrook v. Pitt</u>, 748 F.2d 1168, 1175 (7th Cir. 1984) (holding "the common fund doctrine **cannot** be applied because there is no 'common fund'") (emphasis added). The lodestar approach is also to be applied even with a common fund if there has been the application of a fee shifting statute (id. at Camden I at Westlaw p. 6). The lodestar approach may also be used as a crosscheck to the "percentage of the fund" approach ( Id. at Camden I).

G. The reasonable value of attorneys' fees may be enhanced by the non-monetary relief established within the class action certified. See, Elkins v. Equitable Life Ins. Co., No. 96-296-CV-T-17B, 1998 Westlaw 133741 (M.D.Fla.Jan. 28, 1998); Sheppard v. Consolidated Edison Co., 2002 Westlaw 2003206, 7 (E.D. N.Y. 2002).

H. Reasonable costs attributable to the prosecution of the case are an entitlement to Plaintiffs' counsel in a class action adjudication upon a finding of adequate documentation. (Id. at Waters at Westlaw p. 8.)

I. The final legal application is a quote from Johnson v. Georgia Highway Express, Inc. 488 F. 2d 714 at Westlaw p. 7 (5th Cir. 1974):

> In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees. Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial [arbitral] award for attorney's fees.
>
> By this discussion we do not attempt to reduce the calculation of a reasonable fee to mathematical precision. Nor do we indicate that we enter the discretionary area which the law consigns to the trial judge [arbitrator].

II. FINDINGS OF FACT

A. The monetary benefit provided to this class derives from a settlement fund which by agreement has been capped at $7.6million.

B. The Defendant's reversionary right to the fund, if any is not otherwise claimed, does not negate the application of the "percentage of the fund approach". See, Waters, supra.

C. While the "related case" (as defined by this Court's Order at p. 4, referring to the Stipulation of Settlement) of Ayers v. Media Breakaway, LLC, BC 397096 (Sup Ct. Cal. LA) includes a claim with a fee-shifting statute, the relief established in this class action did not specify any such fee-shifting relief nor has any such relief been granted. See, Plaintiff's Counsel's Exhibit 11, this Court's Order of June 15, 2009. (To be consistent the

Page 5

Undersigned has eliminated all time and expenses attributable to the Ayers case in determining the reasonable value of fees and expenses herein.)

D. The factors to be considered in establishing the reasonable percentage of the fund attributable to attorneys' fees are:

1. **Time and labor**

Class Counsel's lodestar in this case is $606,498.50 (Plaintiffs' Exhibit 6 and 8). As stated above (Section II, C) the time spent on the Ayers case is not included in my findings of fact. This amount of $606,498.50 reflects the time (approximately 1432 hours at rates ranging from $550 – $215 per hour) that a team of Plaintiffs' lawyers spent investigating, researching, filing, litigating, negotiating and ultimately settling this matter. (Plaintiffs' Exhibit 6 and 8).

Defendant's lodestar is in this case is "in the range of $200,000.00 (Plaintiffs' Exhibit 1, Dimond Declaration) utilizing the judgment that the hours should be more in line with defense counsel's time of approximately 700 hours and utilizing rates in the range of $290-175 per hour. See Defendant's Brief of July 24, 2009 at 4-5. Defendant has also submitted an annotated version of Plaintiffs' time and rates suggesting that based on Plaintiffs' time and adjusted rates that the lodestar should be $362,236.50. (Defendant's Exhibit 15).

The multiplier to be applied to the lodestar varies between Plaintiffs' counsel who assert a multiplier of 3.3 (Plaintiffs' Exhibit 2, Buckner Declaration at 6, paragraph 13) and Defendant's evidence that supports a range of 2.5 – 3.5 (Plaintiffs' Exhibit 1, Dimond Declaration at 4, paragraph 18).

Expenses of counsel attributable to this case (as distinguished from the Ayers case) are in the amount of $34,034.07. (Plaintiffs' subsequent submission sent at the time of their Brief of July 24, 2009 emailed to opposing counsel and the Undersigned).

2. **Novelty and difficulty of the questions**

Plaintiffs' counsel contend that as far as consumer class actions are concerned, unauthorized mobile content cases are rather complex. Without in any way understating other types of litigation, each of which present diligent practitioners with unique challenges, demands for thoroughness, and opportunities for creativity, Plaintiffs' counsel faced no easy task here. Plaintiffs' counsel was required to build in depth knowledge of a young industry experiencing rapid growth, including performing research into the programming and technology behind mobile content and cellular telephones, the relationships between the key players that bring premium mobile content from the development stages to the end users, the billing systems and profit-sharing arrangements these companies employ, the tactics used to bill for unauthorized mobile content, and the industry standards and efforts to combat unauthorized mobile content billing. (Plaintiffs' counsel's Proposed Order at 7-8 and Plaintiffs' Exhibit 2, Buckner Declaration).

Moreover, Plaintiffs' counsel further assert that they had to contend with procedural difficulties, including crafting a settlement that adequately addresses the problems of unauthorized mobile content, compensates class members financially, and pays due respect for a new industry's need for flexibility. This speaks nothing of the difficulties encountered in the litigation itself. All in all, this litigation was sufficiently

novel and difficult. (Plaintiffs' Proposed Order at 8 and Plaintiffs' Exhibits 2 and 5, Buckner Declaration and Deposition.)

Defendant asserts that there was a "cut and paste"/ "cookie cutter" approach to much of the services rendered in light of other work in similar cases performed by Plaintiffs' counsel. (See Defendant's Brief of July 24, 2009, at 4, and Defendants Exhibits 1,2,3,4,5,6,8 at 4, and 11).

3. **Requisite skill**

Defendant suggest that the settlement agreement in this case and the settlement agreement in another action filed by Plaintiffs' counsel are essentially identical. (Defendant's Exhibits 4 and 5). Defendant, thereby, asserts that the factors of "requisite skill" and "results obtained" (see below at II.D.8) do not serve as enhancements to the value of attorney's fees; rather they detract from the "time and labor" and "novelty" suggested by Plaintiffs. See Defendant's Brief of July 24, 2009 at 4.

Plaintiffs' counsels are extraordinarily experienced in this type of litigation, having focused much of their practice on consumer protection class actions generally, and third party mobile content charges in particular. (Plaintiffs' Exhibit 13 and 14 set forth the affidavit of Jay Edelson and the firm's detailed class action experience.) The latter includes a detailed description of the technology consumer protection class action experience of the firm, generally, and the individual attorneys who handled this case, in particular. In addition to Plaintiffs' counsel announcing the first major settlement against a wireless carrier, AT&T Mobility, for unauthorized charges, the instant settlement itself is the first of its kind against a pure mobile content provider, which presented difficulties

Page 8

in that no tested model existed from which to base the settlement's framework. (Plaintiffs' Proposed Order at 8 and Plaintiffs'' Exhibits 2, 3, !2, 12A,12B, and 14).

4. **The preclusion of other employment**

While it was argued that Plaintiffs' counsel was precluded from other employment, the Undersigned has not found proof of such preclusion in the evidence before me.

5. **Customary fee**

Plaintiffs' counsel's rates in this matter are set forth in Plaintiffs' Exhibit 6 and 8. Plaintiffs' counsel's rates range from $550-$450 at the partner level to $360-$215 per hour at the associate level (David Healy's time is also billed at $350 per hour). (Plaintiffs' Exhibits 6 and 8 and 12, 12A, and 12B.) Prior approval of Plaintiffs' counsel's fees and rates is set forth in Plaintiffs' Exhibits 12, 12A and 12B.

Defendant's expert, Alan Dimond, while not having class action experience, attested to the rates of his firm, Greenberg Traurig, which has a reputable presence in the South Florida legal market, as well as nationally. This is relevant in light of the following geographic highlights of this case: it is filed in the Southern District of Florida, by Plaintiffs' counsel predominantly from Chicago, Illinois, for an action and remedies of a class that is national. Mr. Dimond's hourly rate is $650 per hour, which was an hourly charge in this matter. His partners' rates range from $700-$400 per hours. His associates' rates range from $500 -$200per hour. (Plaintiffs' Exhibit 4 at 10-11)

6. **Fixed or contingent fee**

The Plaintiffs' counsel's fees in this case are contingent. Additionally, the contingent nature of the fees presented enhanced risks given that no other law firm had

Page 9

ever reached a settlement with a content provider for unauthorized mobile content, as the industry is both rapidly growing and changing. (Plaintiffs' Proposed Order at 9, Plaintiffs' Exhibits 2, 3, 12, 12A, 12B, and 14).

The Plaintiffs' counsel asserts that a contingency fee of between 25%-33% is appropriate to apply. (Plaintiffs' Exhibits 2 and 10, Buckner Declaration and Plaintiffs' Reply in Support of their Mediation Statement dated May 8, 2009.)

Defendant asserts that, if applicable, a contingency fee of 8%-13% is appropriate to apply. (Defendant's Proposed Order at 11 and Defendant's Exhibit 16, <u>Attorneys Fees in Class Action Settlements, An Empirical Study</u>, Eisenberg and Miller, *Journal of Empirical Legal Studies*, Volume 1, Issue 1, 27-28 (March 2004).

7.   **Time limitations**

Various deadlines challenged Plaintiffs' counsel as imposed by the Stipulation of Settlement, the Court, and the Undersigned. However, evidence is not found to have materially enhanced the fee as a result of said limitations.

8.   **Amount involved and the results obtained**

While the amount to be funded is a sum certain, i.e., $7.6 Million, the value of the non-monetary relief is a significant. This is evidenced by Plaintiffs'' Exhibit 5, Buckner Deposition; Plaintiffs' Exhibit 3, the Randall A. Snyder Declaration; and Plaintiffs' Exhibit 10 --, Plaintiffs' Counsel's Reply Brief Dated May 8, 2009 with attached Exhibit B, Transcript of Hearing of March 27, 2009 at 11-12.

Mr. Snyder attested to the significant value of the non-monetary relief provided by the result herein:

> Based on my experience and familiarity with the industry, it is my opinion that adherence to the MMA [Mobile Marketing Association] Guidelines by Media Breakaway will virtually eliminate all instances of unauthorized charges to the class as well as providing an acceptable means for the class members to manage their mobile content and resolve any charging disputes that may possibly occur. This benefit of the Settlement Agreement will result in a profound financial savings to the class of members both now and into the foreseeable future, the value of which may perhaps exceed the value of the Settlement Cap. (Plaintiff's Exhibit 3 at 4).

9. **Experience, reputation and ability of the attorneys suggest the fee is reasonable**

While issue has been made that Plaintiffs' counsel are relatively young, the proof of their experience, reputation, and abilities is extraordinary. (Plaintiffs' Exhibits 12, 12A, 12B, and 14.) Each such cited exhibit elaborates on the experience and unique success of the Plaintiffs' counsel and their firm have had in achieving leading roles in the area of "technology consumer protection class actions." The evidence is without contradiction that Plaintiffs' counsel are both dedicated and knowledgeable in such consumer class action cases, and support the finding that they have been the first to structure settlement agreements for cramming cases against wireless carriers, aggregators, and content providers. (Id.)

10. **"Undesirability" of the case**

The "undesireablity" of the case is evidenced by the inherently complicated technological business model that has arisen in the field of content providers who contract with aggregators who ultimately contract with mobile carriers. Judicial notice is

Page 11

given to the youth of the industry and methods it uses to service and charge the public which has come to have enormous and unprecedented use for the many newly designed product features—text messaging, ring tones, cell phone/internet access. (See also, Plaintiffs' Exhibit 3, Snyder Declaration.) Given this relative youth of the mobile content industry, those who make it up are/were prepared to vigorously defend the claims asserted here. Putting aside the difficulties inherent in any class action litigation, a positive result in this case was not certain. (Plaintiffs' Exhibit 2 and 3, Declarations of Buckner and Snyder.)

Media Breakaway had strong class related arguments, and highly competent counsel, as well as a myriad of carrier-customer arbitration agreements it could have sought to enforce at its disposal. Plaintiffs' counsel took a relatively high risk in their effort to give Plaintiffs Vandyke and Walker their "day in court" against a mobile content provider. (Plaintiffs' Proposed Order at 10 and Plaintiffs' Exhibits 2, 3, 9, 10, and 11.

11.  **Nature and length of professional relationship with the client**

The nature and length of the professional relationship with the client was neither relevant nor material to the determination of a reasonable attorney fee.

12.  **Award in similar cases**

As explained above in Section I E, counsels for both sides have cited cases that have applied benchmark awards of percentages ranging from 20-30% down to 13-17% of the total settlement benefit. The Defendant has also cited a study called <u>Attorneys Fees in Class Action Settlements, An Empirical Study</u>, Eisenberg and Miller, *Journal of Empirical Legal Studies*, Volume 1, Issue 1, 27-28 (March 2004) (Defendant's Exhibit 16. Defendant's counsel states that "this study was conducted in 2004 on consumer class

action settlements yielded findings which are pertinent in comparing fee awards. Statistical data from a national review of consumer class action settlements from 1993 through 2002 were compiled for this study, and the results indicated that the median award was **13%** (with half of the total cases paying less than 13% to class counsel)." (Defendant's Proposed Order at 10 and Defendant's Exhibit 16.)

### III. CONCLUSIONS

By virtue of the novelty (and thereby, complexity) of this relatively new industry, the requisite unique and high skill level and reputation of the Plaintiffs' counsel in this particular area of the law, and the non-monetary results obtained above and beyond the $7.6Million capped settlement fund,

    a. The initial determination of the percentage of the fund approach yields a 20% (my compromise between 13% and 30%) of the fund of $7.6Million or $1,520,000.

    b. The lodestar approach using $606,498.50 in fees may be enhanced by a multiplier of 2.75 (my compromise between 3.3 and 2.5), or $1,667,870.80.

    c. The reconciliation of these approaches yields an ultimate determination of the percentage of the fund approach yielding 20.10% of the fund of 7.6Million or **$1,593,935.40.**

    d. Using my experience and discretion in weighing all legal applications and findings of fact, said reconciliation is just and proper for both Plaintiffs' counsel and Defendant

  and results in a reasonable attorneys' fee to Plaintiffs' counsel in this matter.

  e. Reasonable costs (excluding Ayers) are **$34,034.07**.

  f. The total fees and costs are **$1,627,969.47.**

Accordingly, the Award of Arbitrator of all fees and costs is **$1,627,969.47**, which is hereby sent to the Court for final approval. (I request counsel to separately file with the Court all legal and other authority and evidence cited herein in support of this Award.) As previously agreed, each party shall pay their equal share of all arbitration fees.

AWARDED THIS 3rd DAY OF August, 2009.

_/s/ Rodney A. Max_
Rodney A. Max, Arbitrator

  I HEREBY CERTIFY that a true and correct copy of the foregoing is being furnished via email and U.S. Mail this 3rd day of August, 2009, to the Plaintiffs' and Defendant's counsel.

Jay Edelson, Esquire  
Rafey S. Balabanian, Esquire  
KamberEdelson, LLC  
350 North LaSalle Street, Suite 1300  
Chicago, IL 60610  
(312) 589-6370 / (312) 589-6378  

Frank A. Zacherl, Esquire  
Shutts & Bowen LLP  
1500 Miami Center  
201 South Biscayne Boulevard  
Miami, FL 33131  
(305) 358-6300 / (305) 381-9982  

_/s/ Rodney A. Max_
Rodney A. Max, Arbitrator